UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 8:22-cr-368-MSS-NHA

DEMETRIUS SANCHEZ
MITCHELL

_____

ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant Demetrius Sanchez Mitchell's Amended Motion to Withdraw Plea (the "Motion"),[1] (Dkt. 88), and the Government's response in opposition thereto. (Dkt. 92) Also before the Court is a sealed forensic psychological report from Amy Gambow, Ph.D., regarding Defendant's competency. (Dkt. 99) The report evaluates whether Defendant is currently competent as well as whether Defendant was competent at the time he entered his plea in March 2023. (Id.) The Court directed the Government to file a renewed response to the Motion to explain whether the Government's opposition to the Motion changed due to Dr. Gambow's observations and conclusions. The Government filed a renewed response, in which the Government represents its position has not changed. (Dkt. 102) Upon consideration of all relevant filings, case

---

[1] Defendant previously filed a Motion to Withdraw Guilty Plea. (Dkt. 81) In light of Defendant's having filed the Amended Motion, the initial Motion is due to be denied as moot.

law, and being otherwise fully advised, the Court **DENIES** Defendant's Motion.

In the Motion, Defendant requests leave to withdraw his guilty plea because he contends his plea was not knowing and voluntary. (Dkt. 88) Defendant maintains that his lack of formal education and mental health problems rendered him unable to understand the applicability of the Armed Career Criminal Act and the effect its application would have on his sentence. (Id.) Defendant argues that excerpts from the transcript of the plea colloquy establish he was confused and suffering from "significant mental health issues" at the time he entered his guilty plea. (Id. at 3, 16) Defendant contends these issues hindered his capacity to appreciate the consequences of his guilty plea. (Id. at 16) Defendant notes that the Pre-Sentence Investigation Report details Defendant's history of mental illness but that this history was not explored during the plea colloquy. (Id. at 16–20) Defendant also argues his low level of education and his diagnosed learning disability prevented him from understanding the consequences of his guilty plea. (Id. at 22–23)

In its initial response, the Government disputes Defendant's characterization of the excerpts from the transcript of the plea colloquy as evidence that Defendant was confused or suffering from a mental health issue on the day he entered his guilty plea. (Dkt. 92 at 6–9) The Government notes that Defendant had close assistance of counsel and that Judge Mac R. McCoy, the magistrate judge who administered the plea colloquy, informed Defendant of the consequences of his plea. (Id. at 6–8) The Government argues that Defendant's "repeated requests to speak to his lawyer" should not be considered evidence that his plea was involuntary due to confusion because

2

Defendant does not offer evidence of the substance of the conversations Defendant had with his attorney during the plea hearing, choosing to preserve his attorney-client privilege. (Id. at 8) For this reason, the Government argues the Court should decline to speculate about the substance of Defendant's conversations with his lawyer during the hearing. (Id.) Finally, the Government notes that Defendant denied suffering from any mental or emotional illness on the day of the plea colloquy and that Defendant "confirmed that he was thinking clearly, able to concentrate, understood the proceedings that were happening, and understood their importance." (Id. at 9)

In her report on Defendant's mental state during the plea colloquy, Dr. Gambow reports she found insufficient evidence to support a conclusion that Defendant was incompetent to enter a guilty plea in March 2023. (Dkt. 101 at 8) Dr. Gambow acknowledges that Defendant suffers from "cognitive limitations . . . that may affect his ability to understand complex legal proceedings." (Id.) However, Dr. Gambow notes that "the transcripts reflected that when legal information was further explained to [Defendant] and when [he] was given time to process the information, he verbalized that he understood all that was being discussed." (Id.) She further notes that Defendant has "a lengthy legal history, including two prison terms, suggesting he is likely to hold some comprehension of the legal proceedings." (Id.)

Dr. Gambow understood from her interviews of Defendant and ALQuasia Dale, Defendant's partner who was present for the plea hearing, that Defendant did not understand he would receive a fifteen-year sentence due to alleged miscommunications between Defendant and his former lawyer. (Id. at 6–8) Dr.

3

Gambow states, however, that "such confusion does not necessarily indicate a lack of competence or incapacity." (Id. at 7–8) Dr. Gambow continues, "During the plea hearing, Mr. Mitchell asked questions when he did not understand certain information and requested opportunities to confer with his attorney privately for clarification. These actions suggest some ability to participate meaningfully in his defense, even if he required additional support and explanation to do so." (Id. at 8) "While Mr. Mitchell told me that he may have gone along without fully understanding, I cannot state with certainty the areas in which he was not understanding, or if it was a matter of miscommunication based on the information his attorney had shared with him." (Id.)

In its renewed response to the Motion, the Government represents that its position did not change based on Dr. Gambow's report. (Dkt. 102) The Government states:

> Dr. Gambow's report contains a description of what the doctor describes as a miscommunication between the defendant and his attorney. Based on the doctor's description of that "miscommunication," counsel for the United States has conferred with counsel for the defendant regarding the basis for defendant's motion. Counsel for the United States understands the defendant is not waving privilege and is not offering the advice provided by his prior attorney as the basis for his motion to withdraw his plea.

(Id. at 2–3)

Under Rule 11 of the Federal Rules of Criminal Procedure, "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the

4

withdrawal." Fed. R. Civ. P. 11(d)(2)(B). In determining whether the defendant has shown a fair and just reason for withdrawal, the court may consider the totality of the circumstances, including whether the plea was knowing and voluntary. United States v. Buckles, 843 F.3d 469, 471–72 (11th Cir. 1988).

"Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." United States v. Symington, 781 F.3d 1308, 1314 (11th Cir. 2015) (citations and internal quotations omitted). "That inquiry must address three core concerns underlying Rule 11: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." Id. (citations and internal quotations omitted).

Defendant seeks to withdraw his guilty plea on grounds that he was not competent to understand the consequences of the plea. Dr. Gambow found insufficient evidence to support a conclusion that Defendant was incompetent to enter a guilty plea in March 2023. Although Dr. Gambow acknowledged some evidence that Defendant was confused, perhaps due to a miscommunication from his attorney, Defendant does not put forth this confusion as a basis for withdrawing his guilty plea. Indeed, with this Amended Motion to withdraw the plea, Defendant abandoned his initial argument that his plea was not knowing and voluntary due to a miscommunication with his attorney. Defendant did so even after the Court permitted Defendant's current counsel time to secure a written waiver of Defendant's attorney-

client privilege as to the discussions between Defendant and his former attorney at the plea hearing. (Dkt. 87)

Moreover, the Court notes that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 71 (1977). In the context of a post-conviction proceeding related to an allegedly involuntary guilty plea, the Eleventh Circuit noted that "'the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier'" to post-conviction relief. Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting Blackledge, 431 U.S. at 71). A collateral attack based upon the "'subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.'" Id. (quoting Blackledge, 431 U.S. at 71).

While under oath during the plea colloquy, Defendant represented that he was able to think clearly, concentrate, and understand the proceedings. (Dkt. 92-1 at 12) Defendant represented that he was not suffering from any mental or emotional distress or illness. (Id.) Defendant represented that he understood the purpose of the proceeding was for him to enter a guilty plea, and he stated that he understood the importance of the proceeding. (Id. at 13) Defendant's attorney represented that she had no concerns about Defendant's competency to enter a plea. (Id.) Based on these representations, Judge McCoy concluded Defendant was competent to enter a plea. (Id.) Defendant also stated that he understood Judge McCoy's statement of the mandatory minimum penalty associated with Count I of the Indictment. (Id. at 24,

27–31) These sworn statements "carry a strong presumption of verity[,]" <u>Blackledge</u>, 431 U.S. at 71, and Defendant presents insufficient evidence to persuade the Court otherwise.

Based on the foregoing, the Court cannot conclude that Defendant's plea was not knowing and voluntary. For this reason, Defendant's Amended Motion to Withdraw Plea, (Dkt. 88), is **DENIED**. Defendant's Motion to Withdraw Guilty Plea, (Dkt. 81), is **DENIED AS MOOT**.

**DONE and ORDERED** in Tampa, Florida, this 28th day of August 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies to:**   Counsel of Record
U.S. Marshal Service
U.S. Probation Office
U.S. Pretrial